[Cite as *Miano v. Best*, 2017-Ohio-343.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

| | |
|---|---|
| Christine M. Miano | Court of Appeals No. L-16-1011 |
| Appellant | Trial Court No. CVF-1310222 |
| v. | |
| Steven M. Best dba Kasten Realty | **DECISION AND JUDGMENT** |
| Appellee | Decided: January 27, 2017 |

* * * * *

Christine Miano, pro se.

Doug Dymarkowski, for appellee.

* * * * *

**OSOWIK, J.**

## I.  Statement of Facts and Procedural History

{¶ 1} This case began with the filing of a pro se complaint in the Small Claims Court in Sylvania, Ohio, on September 13, 2013.  It was transferred to the Sylvania Municipal Court soon thereafter.  The plaintiff-appellant is Christine M. Miano; the defendant-appellee is Steven Best.

{¶ 2} Attached to the complaint is a "statement." As noted by the lower court, it is difficult to understand, but the nature of the dispute involves the sale and purchase of real estate. In May of 2010, appellant purchased a piece of property on Vineyard Drive and listed her property on Ward Street using appellee as her broker.

{¶ 3} The allegations against appellee are serious, involving nonfeasance and misfeasance with regard to both transactions. She claims that appellee represented to her that an inspection was completed on the new house, but which was in fact, never done. For multiple reasons, the home was uninhabitable. To name a few, it was structurally unstable, lacked water, had exposed and live electrical wires inside and animal carcasses in the crawl space. Appellant also alleged that the closing documents were incomplete and forged.

{¶ 4} As for the sale of her home on Ward Street, appellant asserts similarly egregious misconduct. For example, she alleges that appellee misrepresented to her that her home had been sold, that prior to the closing date, it was to be occupied by renters and that rental payments would be collected by appellee's representatives. Appellant asserts, "all LIES…never sold and no rent, utilities collected…house wrecked inside and they moved out in middle of night." The file also indicates that, as part of the sale of her home, one of appellee's brokers told her that she had to sign the title of her *vehicle* over to the broker as a "commission," prior to the closing date. Ultimately, the sale never occurred. When the car was finally returned to her, it had been damaged in excess of $8,600.

2.

**{¶ 5}** Prior to filing the instant case, appellant sued appellee, among others, in the Lucas County Court of Common Pleas for breach of contract, breach of fiduciary duty, fraud, conversion and unjust enrichment (case No. CI0201101686). She also filed a charge of disability discrimination with the Ohio Civil Rights Commission ("OCRC") on May 4, 2011.

**{¶ 6}** On November 21, 2011, the OCRC found probable cause that appellee, and the other named respondents, had discriminated against appellant based upon her disability. The respondents were: appellee, Joe (a.k.a. Yousseff) Dakroub, ERA Dynasty, MK Realty Group, LLC, Don Lavoy, and SB Kasten Real Estate. According to his affidavit, appellee was "affiliated with MK Realty Group dba ERA Dynasty as a broker, agent and representative of the company."

**{¶ 7}** In November of 2011, and again on May 13, 2012, appellant entered into two separate settlement agreements. The former was between appellant and appellee. Among other action items, it specifically required appellant to dismiss her pending lawsuit and OCRC charge against appellee. It also required appellee to testify on appellant's behalf if called to do so.

**{¶ 8}** The other settlement agreement was between appellant and Dakroub, Lavoy, and MK Realty dba ERA Dynasty. It provided for the payment of $38,000, to be paid by MK Realty to appellant, in exchange for the release of all claims as to those named parties.

3.

**{¶ 9}** In this case, appellant makes two legal arguments. First, she claims that the settlement agreement(s) were procured by fraud. Second, appellant claims that appellee is not covered by the 2012 release because he was not a party to it.

**{¶ 10}** At issue herein are cross-motions for summary judgment, both of which were supported by the parties' respective affidavits. On December 22, 2015, the trial court granted appellee's motion for summary judgment and denied appellant's. Appellant appealed.

## II. Appellant's Assignments of Error

**{¶ 11}** Appellant asserts nine assignments of error, although they are misnumbered to appear to be ten. The assignments occupy three, single spaced pages of appellant's brief. We summarize them below:

1. The trial court erred in failing to rule on several pretrial motions, including a motion that the trial judge recuse himself on the basis of biased and preferential treatment.

2. The trial court erred in denying appellant's request to present evidence to support her claim of fraud and duress.

3. The trial court erred in granting appellee's motion for summary judgment because the 2011 release is not binding or enforceable.

4. The trial court erred, as a matter of fact, in stating that appellant had an attorney and/or that appellant's "counsel worked with defense counsel to release and reach settlement."

4.

5. The trial court erred in stating that appellant received $38,000.00 from appellee to release him from liability.

6. The trial court erred in finding that no issue of material fact existed and in refusing to hear appellant's evidence of duress and coercion.

7. The trial court erred in ruling in appellee's favor as he was "equitably estopped" from moving for summary judgment based upon his misrepresentations on November 18, 2011.

8. "The trial court erred when it ruled in favor of appellee where an issue of material fact existed as to circumstances surrounding the Nov. 18, 2011 release [which] was procured under duress and coercion and appellant [was] denied by court the ability to produce said evidence to substantiate."

9. The trial court erred because the appellee's motion to dismiss the case was not entered on the docket.

### III. Standard of Review

{¶ 12} Appellate review of a summary judgment is de novo. *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). In other words, we employ the same standard as the trial court, without deference to its decision. *Lorain Natl. Bank v. Saratoga Apts.,* 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989). The motion may be granted only when it is demonstrated:

(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that

reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 67, 375 N.E.2d 46 (1978), Civ.R. 56(C).

{¶ 13} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt,* 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleadings, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); *Riley v. Montgomery,* 11 Ohio St.3d 75, 79, 463 N.E.2d 1246 (1984). A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.,* 135 Ohio App.3d 301, 304, 733 N.E.2d 1186 (6th Dist.1999).

## IV. Law and Analysis

{¶ 14} In her first assignment of error, appellant complains that the trial court failed to rule on several motions before the court. She also complains of bias by the trial court.

{¶ 15} "It is well settled that 'when a trial court fails to rule upon a pretrial motion, it may be presumed that the court overruled it.'" *Journeyman Professionals, Inc.*

6.

*v. Am. Family Ins. Co.*, 6th Dist. Lucas No. L-05-1404, 2006-Ohio-5624, ¶ 24, quoting

*State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 223, 631

N.E.2d 150 (1994).

{¶ 16} With regard to her complaint of bias and preferential treatment, this court

does not have jurisdiction to vacate a trial court's judgment based on a claim of judicial

bias. *Beer v. Griffith*, 54 Ohio St.2d 440, 441-42, 377 N.E.2d 775 (1978). In *Beer*, "the

Ohio Supreme Court explicitly and unequivocally stated that, since only the Chief Justice

or [her] designee may hear disqualification matters, the Court of Appeals is without

authority to pass upon disqualification or to void the judgment of the trial court on the

basis of judicial bias." (Citation omitted.) *In re Estate of Fields*, 6th Dist. Wood No.

WD-15-019, 2016-Ohio-5358, ¶ 16-18, citing *Beer* at 441-442.[1]

{¶ 17} Moreover, even if we had jurisdiction to consider the assignment of error,

appellant's claims are without merit. "'A judge is presumed not to be biased or

prejudiced, and a party alleging bias or prejudice must present evidence to overcome the

presumption.'" *Cline v. Mortg. Elec. Registration Sys.*, 10th Dist. Franklin No. 13AP-

240, 2013-Ohio-5706, ¶ 33, quoting *Wardeh v. Altabchi*, 158 Ohio App.3d 325, 2004-

Ohio-4423, 815 N.E.2d 712, ¶ 20 (10th Dist.). "A judge's rulings of law are legal issues,

subject to appeal, and are not by themselves evidence of bias or prejudice." *Id.*, citing

*Okocha v. Fehrenbacher*, 101 Ohio App.3d 309, 322, 655 N.E.2d 744 (8th Dist.1995).

---

[1] We note that appellant was advised by Disciplinary Counsel of the Supreme
Court of Ohio that it had concluded that there was no bias on the part of the court.

7.

{¶ 18} The gist of appellant's argument is that she was treated unfairly because she was not "given" legal advice, whereas the court advised appellee to file a motion for summary judgment.

{¶ 19} In denying *appellee's* motion to dismiss the complaint, it stated, "[b]ecause [appellee] relies on information outside the pleadings in support of his motion, his arguments would be more appropriately brought in the form of a motion for summary judgment. Pursuant to Civ.R. 12(B), this Court grants [appellee] fourteen days [from today to do so]."

{¶ 20} We see nothing problematic, as a matter of law, with the court's reference to the civil rules and allowing appellee to resubmit his argument as a motion for summary judgment.

{¶ 21} We also note that the trial court did, in fact, offer similar advice to appellant. For example, in its June 2, 2015 order, the court denied appellant's motion for a "no contact order" because it lacked jurisdiction. It suggested, however, that appellant "contact the Sylvania Prosecutor's office who has jurisdiction in the event [appellant] has sufficient grounds to proceed." The court acted appropriately in both circumstances.

{¶ 22} There is no evidence of bias or prejudice by the lower court. Appellant's first assignment of error is not well-taken.

{¶ 23} Assignments of error Nos. 2, 3, 6, 7 and 8 allege the same thing: that the trial court erred in refusing to hear evidence of fraud and duress that would, in effect, nullify the settlement agreement.

8.

{¶ 24} Decisions concerning the admission or exclusion of evidence are within the discretion of the trial court and will not be reversed absent an abuse of that discretion. *Beard v. Meridia Huron Hosp.*, 106 Ohio St.3d 237, 2005-Ohio-4787, 834 N.E.2d 323. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 25} Civ.R. 56(E) limits the types of evidence which may be considered for purposes of summary judgment. Permissible evidence includes affidavits and supporting papers attached thereto, that are specifically incorporated by reference. The record in this case includes appellant's motion for summary judgment and a subsequently filed affidavit with multiple attachments. The trial court accepted and specifically referenced appellant's evidence.

{¶ 26} With regard to her allegation of fraud, a claim of fraud in the inducement arises when a party is induced to enter into an agreement through fraud or misrepresentation. "The fraud relates not to the nature or purport of the [contract], but to the facts inducing its execution * * *." *Haller v. Borror Corp.*, 50 Ohio St.3d 10, 14, 552 N.E.2d 207 (1990). In order to prove fraud in the inducement, a plaintiff must prove that the defendant made a knowing, material misrepresentation with the intent of inducing the plaintiff's reliance, and that the plaintiff relied upon that misrepresentation to her detriment. *Beer v. Griffith*, 61 Ohio St.2d at 123, 399 N.E.2d 1227.

9.

**{¶ 27}** "A classic claim of fraudulent inducement asserts that a misrepresentation of facts outside the contract or other wrongful conduct induced a party to enter into the contract: Examples include a party to a release misrepresenting the economic value of the released claim, or one party employing coercion or duress to cause the other party to sign an agreement." *Abm Farms v. Woods*, 81 Ohio St.3d 498, 502-504, 692 N.E.2d 574 (1998).

**{¶ 28}** Here, appellant does not argue, or proffer evidence to support a claim, that appellee made misrepresentations of facts to induce her to settle the underlying dispute. Rather, her fraud claim is limited to the actions by appellee, and his colleagues, as to the underlying dispute, i.e. the purchase and sale of appellant's homes.

**{¶ 29}** We find, as a matter of law, that there is no evidence to support appellant's case that the settlement agreements were procured by fraud upon her. This is not to say that this case does not allege an array of unconscionable actions by appellee and his colleagues. The allegations pertaining to the sale and purchase of real estate, however, occurred prior to the negotiated settlement agreements, and they encompassed the underlying dispute.

**{¶ 30}** We find that there is no genuine issue of material fact to support appellant's fraud in the inducement claim and that appellee is entitled to judgment as a matter of law. Similarly, we find that the trial court did not abuse its discretion with regard to its evidentiary rulings. Appellant's second, third, sixth, seventh and eighth assignments of error are not well-taken.

10.

{¶ 31} In her fourth assignment of error, appellant alleges the trial court erred when it said, "plaintiff's counsel worked with defense counsel to release and reach settlement." Appellant states that she acted pro se with regard to the mediation before the OCRC in 2012. She also adamantly disputes that she "worked with" appellee's counsel during the mediation because, she claims, appellee "refused" to participate.

{¶ 32} That appellant acted pro se at the mediation does not allege an error as to any of the trial court's legal conclusions. Therefore, appellant's fourth assignment of error is not well-taken. To the extent that appellant is arguing that appellee was not protected by the 2012 settlement agreement, that issue is addressed below, in her fifth assignment of error.

{¶ 33} In her fifth assignment of error, appellant claims that "the trial court erred in stating [that she] received $38,000.00 to release [appellee] from liability. [Appellant] received nothing from [appellee]." Appellant claims that the second release was between herself and "owner ERA Dakroub and Relator Lavoy."

{¶ 34} The first settlement agreement was between appellant and appellee, in his individual capacity. It is dated November 18, 2011. The agreement included a promise not to "commence any action, or continue to prosecute any currently pending action, against the other, on the basis of any claims released by this Settlement Agreement." The release makes specific reference to her claim in the Lucas County Court of Common Pleas and her OCRC charge. The claim was described as "related to the sale and

11.

purchase of real estate located at * * * Vineyard Road, * * * Ward Street, and [appellant's] 2001 Chevrolet Blazer."

{¶ 35} The second settlement agreement was entered into on May 3, 2012. It is between appellant and Joseph (aka Youssef) Dakroub, Donald Lavoy and "MK Realty Group dba ERA Dynasty." In exchange for appellant's release of all claims "relating directly or indirectly to the allegations in the [OCRC charge] and the Lawsuit," MK Realty agreed to pay appellant $38,000.

{¶ 36} "[A] settlement agreement is a contract designed to terminate a claim by preventing or ending litigation and such agreements are valid and enforceable by either party." *Spercel v. Sterling Industries,* 31 Ohio St.2d 36, 38, 285 N.E.2d 324 (1972). Settlement agreements are highly favored in the law. *Continental W. Condominium Unit Owners Ass'n v. Howard E. Ferguson, Inc.*, 74 Ohio St.3d 501, 502, 660 N.E.2d 431 (1996).

{¶ 37} In support of this assignment of error, appellant alleges that, because appellee did not attend a mediation that resulted in the 2012 settlement agreement and because appellee's attorney said that the release was "voided" and to "tear it up," appellee is not protected by it. She also appears to argue that the money she received to settle claims was between her and the other named parties and/or their business entities.

{¶ 38} It is undisputed that the issues raised in the instant case involve the same transaction and occurrence that was the subject of the OCRC charge and the case in Lucas County Court of Common Pleas. The language of the settlement agreements

12.

clearly releases appellee (in the first settlement agreement) and the business with which he was affiliated, MK Realty (in the second release). According to his affidavit, appellee was "affiliated with MK Realty Group dba ERA Dynasty as a broker, agent and representative of the company." As a matter of law, therefore, appellant's complaint is barred by the terms of the settlement agreement. Accordingly, the fifth assignment of error is found not well-taken. *See Palmer v. Pheils*, 6th Dist. Wood No. 92WD024, 1993 Ohio App. LEXIS 601, *12 (Feb. 5, 1993).

{¶ 39} Finally, in her ninth assignment of error (erroneously labeled as the tenth), appellant asserts that the trial court erred because the docket fails to indicate appellee's motion to dismiss.

{¶ 40} It is the role of the clerk of courts to receive court filings and to maintain the docket, not the trial court's. In any event, the docket in this case indicates that appellee filed two motions to dismiss the case: the first on September 10, 2014, and the second on January 9, 2015. Both motions are noted on the docket, as are appellant's objections thereto and the trial court's decisions denying the motions. Appellant's ninth assignment of error is not well-taken.

{¶ 41} We find that there are no genuine issues of material fact and that appellee is entitled to judgment as a matter of law. Therefore, we affirm the judgment of the

13.

Sylvania Municipal Court to grant summary judgment to appellee and to deny summary judgment to appellant. Appellant's assignments of error are not well-taken. Pursuant to App.R. 24, costs are assessed to appellant.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                                         _____
                                                                 JUDGE

Stephen A. Yarbrough, J.

                                       _____
James D. Jensen, P.J.                                              JUDGE
CONCUR.

                                       _____
                                                           JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.